UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NAYTHAN ANDREW SCHWAB,

        Plaintiff,

    v.                                             Case No. 15-C-264

MILWAUKEE POLICE DEPT.,
SEAN McCORD, SCOTT CHARLES,
MICHAEL LEES, and SCOTT RANDOW,

        Defendants.

---

## DECISION AND ORDER

Plaintiff Naythan Andrew Schwab, proceeding pro se, brought this 42 U.S.C. § 1983 civil rights action against the above-named law enforcement defendants, alleging violations of constitutional rights relating to his arrest for disorderly conduct. Schwab claims he was subjected to excessive force during his arrest in violation of the Fourth Amendment. The Court has jurisdiction under 28 U.S.C. § 1331. This case is now before the Court on Defendants' motion for summary judgment. (ECF No. 55.) For the reasons that follow, summary judgment will be granted in favor of the Milwaukee Police Department, Scott Charles, and Scott Randow. Summary judgment will be denied for Sean McCord and Michael Lees.

### BACKGROUND

In the early morning hours of May 31, 2009, Officers Sean McCord and Michael Lees of the Milwaukee Police Department were on patrol near Walter Street in Milwaukee. McCord and Lees observed an individual, later identified as Naythan Andrew Schwab, in an argument with a security guard from a local tavern. The argument between Schwab and the security guard took place in the

middle of East Michigan Avenue and was obstructing traffic. Schwab admits he was yelling at the guard, but denies that he ever hit anyone. (ECF No. 76-1, 5–8.)

The parties dispute what happened after the initial confrontation, but for purposes of deciding the defendants' motion for summary judgment, the court must accept the plaintiff's version. Fed. R. Civ. P. 56(a); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). This is because resolving factual disputes is the job of the jury, not the judge. Viewing the evidence in the light most favorable to the plaintiff, Schwab ran away from the hostile security guards and stopped when he realized that uniformed Milwaukee police officers were also pursing him. (ECF No. 68, ¶ 8.) Schwab was tackled by the first security guard to reach him. McCord positioned himself on Schwab's back in order to better restrain him. Lees observed the security guard punch Schwab at least once. (ECF No. 78-7, 3.) Schwab alleges, as does an eyewitness, that the officers punched and kicked Schwab while he was on the ground. (ECF No. 68, ¶ 10; ECF No. 66-1.) When Schwab was on the ground, he repeatedly yelled "I am not resisting!" (ECF No. 68, ¶ 11; ECF No. 66-1.) Schwab was handcuffed while still face down on the concrete and thrown in the police van (ECF No. 68, ¶ 13.) There were visible scrapes on Schwab's face when he was placed into the van. (ECF No. 78-6, 3.) McCord used his foot to push Schwab's legs into the van and instructed other officers to place a spit mask on Schwab. (*Id.*) Schwab alleges that he was choking on his own blood and the officers did not provide any assistance. (ECF No. 68, ¶ 16.)

At the criminal justice facility, Schwab was unable to walk and the officers were forced to use a wheelchair to move him. Schwab requested multiple times—without success—for his handcuffs or shackles to be loosened. Schwab claims that when McCord examined the handcuffs, he intentionally tightened both of them. (ECF No. 68, ¶ 26.) The officers returned Schwab back

2

to the van and Lees monitored Schwab for about an hour. When Schwab would not move his leg out of the path of the police van's door, Lees closed the door on Schwab's leg using "a good amount of force, using about 80% of his weight." (ECF No. 78-7, 4.) Lees continued to use that force on Schwab's legs for about a minute until he no longer felt resistance from Schwab. (*Id.*) Despite his repeated requests, Schwab claims that he was never provided any medical assistance or seen by a nurse. (ECF No. 68, ¶ 28.)

On June 10, 2009, Schwab filed a citizen complaint report with the Milwaukee Police Department, alleging that he had been subject to excessive force on May 31, 2009. (ECF No. 78-2.) The Professional Performance Division/Special Investigation Section of the Milwaukee Police Department conducted an investigation into Schwab's complaint and came to the conclusion that it was unfounded on November 5, 2009. (ECF No. 78-3.) Schwab ultimately pled guilty to disorderly conduct on January 28, 2011. During the guilty plea hearing, Schwab characterized his actions on May 31, 2009 as

> I was being loud and confrontational with the security guard. I was swearing and causing a scene. People stopped heading to their vehicle and formed a circle. I became boisterous and provoked an altercation. I involved myself in violent, obnoxious, distasteful behavior. . . . I had -- I approached the guard, and I became threatening; and I said some things that I shouldn't have said that were violent towards the security guards. . . . I threatened to -- to use my fists to solve the problem when I should have solved it a different way. . . . I approached the guards, and I was ready to fight; and I let them know I was ready to fight. And I was -- I became threatening, and my intentions were to have an altercation. . . . I got in -- I got in the guard's face, and I said whoever did this, we can fight right now; and I became threatening; and I did everything except for put my hands on the -- on the guard. I was in his face. I was threatening. I was angry. My actions were violent.

(ECF No. 76-1, 5–8.) Schwab thereafter commenced this action against several of the officers involved in his arrest, along with the Milwaukee Police Department. The Defendants now move for

3

summary judgment on the ground that the undisputed material facts establish that they are entitled to judgment as a matter of law.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis.1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

### B. Schwab and Braboy's Affidavits

As an initial matter, Defendants argue that the Court should disregard the affidavits of both Naythan Schwab and Jameel Braboy. Specifically, they argue that Schwab's affidavit should be considered sham for conflicting with his prior sworn statements given at his guilty plea hearing for disorderly conduct. Defendants also argue that Braboy's affidavit should be disregarded because taking it as true would inherently undermine Schwab's disorderly conduct conviction.

#### 1. Naythan Schwab's Affidavit

"It is well established in this Circuit that, as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn

4

testimony in the absence of . . . the unmistakable need to clarify prior ambiguous statements." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.5 (7th Cir. 2008) (citations omitted). Allowing a party to defeat summary judgment by submitting affidavits that contradict previous sworn testimony would defeat the very purpose of summary judgment. *Babrock v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 861 (7th Cir. 1985). However, the sham affidavit rule should be applied with caution because "summary judgment is not a tool for deciding questions of credibility." *Castro v. DeVry University, Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (citations omitted). A court should only disregard an affidavit as sham when the affidavit involves "contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment." *Id.*

This case does not call for application of the sham affidavit rule. Schwab's affidavit conflicts with his guilty plea testimony in two ways: (1) Schwab assets he entered and left the street before the light turned green; and (2) he claims "[t]here was no prior verbal or physical altercation between myself and security, and I am unaware of any motive from them to attack me." (ECF No. 68, ¶¶ 3–5.) Whether Schwab disrupted traffic or was in a verbal disagreement with security guards outside of a bar is certainly relevant in assessing Schwab's credibility and the initial actions of the Milwaukee police officers. However, Schwab's sworn guilty plea testimony does not give "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . ." *See Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1170 (7th Cir. 1996) (quoting *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). The material facts at issue for Schwab's § 1983 claim involve whether the police officers on the scene used excessive force during and after Schwab's arrest.

5

Additionally, Schwab's affidavit does not appear to have been created for the sole purpose of defeating summary judgment—he made similar claims to the Milwaukee Police Department less than two weeks after the initial incident. (ECF No. 78-2.) The Court will disregard the portions of Schwab's affidavit that contradict his sworn testimony. *See Bank of Illinois*, 75 F.3d at 1172 ("Disregarding, then, those portions of the depositions that contradict the Shepards' prior sworn statements . . . ."). The remainder of Schwab's affidavit will thus be considered for the purposes of this motion.

### 2. Jameel Braboy's Affidavit

A § 1983 action cannot continue if judgment in favor of the plaintiff would necessarily imply the invalidity of the plaintiff's criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487. The plaintiff must rely upon a version of the facts that would not undermine or contradict the plaintiff's prior conviction. *See Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014). In a § 1983 claim based on excessive force, "the plaintiff need not adopt the defendants' view of what occurred in order to contest the degree of force used." *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). The proper test is to examine the factual basis of the § 1983 claim and the factual basis of the conviction: if the former does not necessarily invalidate the latter, then the § 1983 claim may proceed under *Heck*. *See Helman*, 742 F.3d at 762.

Schwab was not convicted of resisting arrest—he was charged and convicted with disorderly conduct. His sworn testimony at his guilty plea hearing demonstrates that he was convicted because

6

he refused to leave the middle of a busy street and was in a verbal altercation with the security guards. Schwab's disorderly conduct conviction and a determination that the police officers used excessive force immediately during and after the arrest can coexist with one another. While Braboy's affidavit does set forth facts that contradict Schwab's disorderly conduct conviction, the facts that Schwab would rely on to succeed on his § 1983 claim do not directly conflict with his disorderly conduct conviction. For that reason, Schwab's § 1983 claim—and the use of Braboy's affidavit—is not barred by *Heck v. Humphrey*.

**C. Officers McCord and Lees**

**1. Excessive Force Claim**

Schwab asserts an excessive force claim against Officers McCord and Lees, alleging that Schwab was subject to excessive force in violation of the Fourth Amendment as the result of the officers' actions during his arrest and transfer to the criminal justice facility. For § 1983 claims involving excessive force prior to criminal charges, "plaintiffs must demonstrate that a state actor's use of force was 'objectively unreasonable' under the circumstances." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (citations omitted). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).

The nature and extent of force that may reasonably be used by officers depends on the specific circumstances of the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

7

arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). The inquiry is an objective one, meaning that the subjective feelings or intent of the officers is not relevant. *Id.*

When viewing the facts in the light most favorable to the non-moving party, a reasonable jury could find that the force used by Officers McCord and Lees against Schwab was objectively unreasonable. It is undisputed that McCord and Lees were two of the officers that reported to the scene of Schwab's disorderly conduct. Schwab and Jameel Braboy both assert that Schwab stopped running once he realized that police officers were pursing Schwab. Braboy claims he saw police officers punch and kick Schwab when he was on the ground and that Schwab was not resisting. Schwab identifies McCord as the officer who was on his back during the incident. Although the officers claim they only used the necessary amount of force to respond to the disorderly conduct, ensure that Schwab did not pose a threat to the officers, and ensure Schwab would no longer attempt to evade or resist arrest, a reasonable jury could find that the officers used a greater amount of force than was reasonably necessary under the circumstances.

Even more important for the purposes of surviving summary judgment are Schwab's claims regarding the officers' actions at the criminal justice facility. Schwab asserts that McCord squeezed both handcuffs at the Milwaukee County Jail to make them tighter, rather than responding to Schwab's request to loosen them. This alleged tightening took place well after the initial arrest. Detective Radclaw, the officer in charge of investigating Schwab's initial complaint, observed "faint

8

lined markings to both of Schwab's wrists" almost two weeks after the incident. (ECF No. 78-4, 2.) Despite the flexibility afforded to police officers to make split-second decisions, the excessive tightening of handcuffs of a suspect who was not resisting or evading arrest is not objectively reasonable. *See Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (holding that over-tightening the handcuffs, among other things, of a woman who was not threatening to harm the police, was not resisting or evading arrest, and was charged with a minor offense was not objectively reasonable). Schwab also alleges that Lees slammed the van door on Schwab's legs—an allegation supported by Lees' statement that he held the van door down on Schwab's legs for about a minute, using about 80% of his body weight. (ECF No. 78-7, 4.) A reasonable jury could find that these actions were not objectively reasonable under the circumstances.

### 2. Qualified Immunity Defense

McCord and Lees argue that their actions are protected by the doctrine of qualified immunity. Qualified immunity requires a two step inquiry: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) if so, whether the right was clearly established at the time of the alleged inquiry. *See Payne*, 337 F.3d at 775; *Saucier v. Katz*, 553 U.S. 194, 201 (2001). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne*, 337 F.3d at 775–76 (citations omitted). If an officer violated a constitutional right and it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, then the officer is not entitled to the qualified immunity defense.

As discussed above, when taking the facts in the light most favorable to Schwab, Officers

9

McCord and Lees violated Schwab's Fourth Amendment right to be free from objectively unreasonable force during an arrest. The next step in the inquiry is "whether it would have been sufficiently clear to a reasonable officer that he used excessive force in the situation he confronted." *Id.* at 780. According to Schwab and Braboy's accounts, Officers McCord and Lees tackled, punched, and kicked Schwab, even though Schwab was no longer evading arrest and was not resisting in any manner. Schwab further alleges that once the initial arrest was over, and the officers were no longer making split-second decisions, McCord intentionally squeezed Schwab's handcuffs to tighten them as much as possible and that Lees slammed the van door on Schwab's legs and held it there. If the facts as alleged by Schwab are found to be true, then it should have been clear to Officers McCord and Lees, or any reasonable officer under the circumstances, that the amount of force used was unlawful.

I therefore conclude that Schwab has made an adequate showing to sustain an excessive force claim against McCord and Lees and that qualified immunity is not appropriate in this case. McCord and Lees' motion for summary judgment will be denied.

**D. Sergeants Charles and Randow**

Schwab appears to allege that Sergeants Charles and Randow were aware of excessive force against him and failed to intervene. Schwab did not raise this claim in his Complaint and instead first appears to first raise it in his brief in opposition to summary judgment. (ECF No. 67, 2.) Regardless, Schwab has not presented any evidence on this claim to survive summary judgment.

To succeed on a failure to intervene claim, a plaintiff must show "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to

10

intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Even taking the facts in the light most favorable to Schwab that Officers McCord and Lees used excessive force, Schwab has presented no evidence that either Charles or Randow had a realistic opportunity to intervene. Schwab claims that Charles was present during his arrest and could have stopped McCord and Lees, but the facts indicate that Charles did not arrive at the scene until after Schwab was in custody. (ECF No. 58, ¶ 3.) There is no evidence that Charles was present for the incidents involving the handcuffs or the van door. Additionally, the parties do not dispute that Randow has never met Schwab in person. Lees did not notify Randow about the use of force involving the van door until after the incident had taken place. (ECF No. 78-7, 5.)

There has been no evidence of anything Charles or Randow could have realistically done to prevent the force used against Schwab. Accordingly, Schwab's claims against Charles and Randow must be dismissed.

**E. Milwaukee Police Department**

Schwab attempts to allege that the Milwaukee Police Department is liable under *Monell* for injuries to Schwab that resulted from its policies or practices. Once more, Schwab did not raise this claim until his brief in opposition to summary judgment. (ECF No. 67, 2.) Furthermore, the Milwaukee Police Department is the incorrect party to bring a *Monell* claim against. Wisconsin does not permit suing of individual agencies or departments, such as police departments, for § 1983 local government liability. *See, e.g. Baltzer v. City of Sun Prairie Police Dept.*, 725 F. Supp. 1008, 1019–20 at n.14 (W.D. Wis. 1989); *Townsend v. Wisconsin Desert Horse Assn.*, 42 Wis. 2d 414, 423–24, 167 N.W.2d 425, 432 (1969); *Metzger v. Wis. Dept. of Trans.*, 35 Wis. 2d 119, 150 N.W.2d 432 (1967). Therefore, Schwab's *Monell* claim against the Milwaukee Police Department

11

must be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Milwaukee Police Department, Sean McCord, Scott Charles, Michael Lees, and Scott Randow's motion for summary judgment (ECF No. 55) is granted in part and denied in part. The motion is **GRANTED** as to any claims against the Milwaukee Police Department, Scott Charles, and Scott Randow, and those claims are dismissed. Summary judgment is **DENIED** with respect to Plaintiff's excessive force claims against Sean McCord and Michael Lees. Further, considering that a trial will be needed to resolve the case, and given Plaintiff's current incarceration and his limited understanding of law and procedure, the court will direct the pro se staff attorneys to attempt to recruit counsel for the limited purpose of representing Plaintiff at the final pretrial conference and trial. Once counsel is recruited, the Clerk is to place this matter on the Court's calendar for a telephone conference to address further scheduling.

Dated this __15th__ day of September, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court